UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROBERT COBB,

                                    Plaintiff,                          05-CV-6034 (CJS)

         -vs-
                                                                        DECISION AND ORDER

J. WOOD, Correctional Officer, J. THOMPSON,
Hearing Officer, SHIRLEY GRAUBARD, Inmate
Grievance Resolution Committee Superviser,
CALVIN E. WEST, Superintendent of
Elmira Correctional Facility, DONALD SELSKY,
Special Housing Unit Director, THOMAS G.
EAGEN, Central Office Review Committee
Director, GLENN S. GOORD, Commissioner
of the New York State Department of
Correctional Services,

                                    Defendants.
_____

APPEARANCES

For Plaintiff:                      Robert Cobb, *pro se*
                                    DIN No. 99-A-5214
                                    Southport Correctional Facility
                                    P.O. Box 2000
                                    236 Institution Road
                                    Pine City, NY 14871-2000

For Defendants:                     Emil J. Bove, Esq.
                                    Assistant Attorney General of Counsel
                                    NYS Office of the Attorney General
                                    144 Exchange Boulevard, Suite 200
                                    Rochester, New York 14614

1

INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983 in which prison inmate Robert Cobb ("Plaintiff") alleges that Defendants violated his 14th Amendment right to procedural due process by conspiring to deprive him of due process in connection with a prison disciplinary hearing.  Now before the Court is Defendants' application [#24] for summary judgment.  For the reasons that follow, Defendants' application is granted and this action is dismissed.

BACKGROUND

The following are the undisputed facts of this case viewed in the light most favorable to Plaintiff.  On March 14, 2004, at Elmira Correctional Facility ("Elmira") where Plaintiff was then housed, defendant Correction Officer John Wood ("Wood") wrote a misbehavior report against Plaintiff, accusing Plaintiff of possessing a weapon. Specifically, Wood indicated that he observed Plaintiff take a sharpened paintbrush handle from another inmate named Ragin.  Plaintiff was provided with a copy of the misbehavior report, and was given assistance in preparing a defense by Corrections Officer Brockway.  Defendant Calvin West ("West"), the Superintendent of Elmira, designated defendant James Thompson ("Thompson"), Senior Correction Counselor, to conduct a Tier III disciplinary hearing.  Thompson convened the hearing on March 19, 2004, at which time he permitted Plaintiff to watch a videotape of the incident. Thompson observed for the record that the videotape showed an inmate approach Plaintiff from behind.  Plaintiff initially denied that anyone had approached him, but later admitted that an inmate had approached him and slipped an object into his pocket, although he denied that it was Ragin.  At Plaintiff's request Thompson adjourned the

2

hearing in order to allow Wood to testify.

On March 23, 2004, Thompson re-convened the hearing, and Wood testified. Wood indicated that on March 14, 2004, he observed Ragin "go after" another inmate with an object in his hand, and then hand off the object to Plaintiff.  Wood indicated that he immediately told Plaintiff to drop the object, which Plaintiff did, and that the object was a sharpened paintbrush handle.  Plaintiff declined to cross-examine Wood. Plaintiff also declined to call additional witnesses or present any additional evidence. Plaintiff offered no explanation for why he was in possession of the weapon, other than to say that someone had slipped it into his pocket.  Thompson reviewed the evidence with Plaintiff, then found Plaintiff guilty of possessing the weapon.  Thompson, noting that Plaintiff already had a conviction for weapons possession[1], imposed a sentence of 9 months in the Segregated Housing Unit ("SHU") and nine months loss of privileges.

Plaintiff appealed his conviction to defendant Donald Selsky ("Selsky"), Director of the Office of Inmate Discipline and Special Housing for the New York State Department of Correctional Services ("DOCS").  In the appeal, Plaintiff alleged the following errors: 1) the misbehavior report was factually deficient; 2) he was denied the right to present documentary evidence and cross-examine witnesses; and 3) the ruling was arbitrary and capricious.  On May 20, 2004, Selsky affirmed the hearing disposition.

On March 30, 2004, while his appeal to Selsky was pending, Plaintiff filed an inmate grievance, alleging that Thompson had deprived him of procedural due process.

---

[1]Plaintiff has an extensive disciplinary record in addition to the weapons possession convictions. (Thompson Aff. Ex. I)

Plaintiff requested that he be given $10 million and released from SHU.  On March 31, 2004, Elmira's Inmate Grievance Review Committee ("IGRC") returned the grievance, with comments indicating that Plaintiff was attempting to pursue judicial remedies, which was inappropriate in a grievance proceeding.  On April 3, 2004, Plaintiff sent a letter to West, attempting to appeal the rejection of his grievance.  West referred the matter to defendant Cheryl Graubard ("Graubard"), Elmira's Inmate Grievance Program Supervisor.  Graubard investigated Plaintiff's complaint and recommended that the grievance be denied, finding, in relevant part, that Plaintiff could not appeal his disciplinary hearing through the inmate grievance program.  Graubard recommended that Plaintiff take a direct appeal of his disciplinary conviction.  Based on Graubard's recommendation, the IGRC dismissed Plaintiff's appeal.  Subsequently, Plaintiff again wrote to West, attempting to appeal the dismissal of his grievance.  West again referred Plaintiff's correspondence to Graubard.  On April 19, 2004, Graubard replied to Plaintiff, advising him that he could not take a direct appeal to the facility superintendent, but that he could file an appeal with the Inmate Grievance Program Supervisor.  Plaintiff declined to do so.

Instead, on April 15, 2004, Plaintiff sent a letter to DOCS' Central Office Review Committee ("CORC"), purporting to appeal the dismissal of his grievance.  Plaintiff sent this letter to CORC only five days after he filed his "appeal" with West, and before receiving any response from Graubard.  On April 22, 2004, defendant Thomas Eagen ("Eagen"), Director of DOCS' Inmate Grievance Program, responded to Plaintiff's letter, reiterating that Plaintiff would need to file an appeal with Elmira's Inmate Grievance Program Supervisor.  Plaintiff again declined to do so.

4

On November 5, 2004, following the completion of his disciplinary sentence, Plaintiff wrote to defendant Glenn Goord, Commissioner of DOCS, indicating that he had been "capriciously and arbitrarily convicted" at the disciplinary hearing.  Plaintiff further indicated that his grievance had been dismissed, and that he had been prevented from exhausting his grievance appeals.  Plaintiff additionally indicated that he was transferred to Upstate Correctional Facility ("Upstate") in retaliation for filing grievances.  On November 27, 2004, Plaintiff sent a second letter to Goord that was nearly-identical to the first, except that it did not mention retaliation.  Goord's staff referred Plaintiff's first letter to Lucien LeClaire ("Leclaire"), DOCS Deputy Commissioner.  Leclaire, in turn, referred the matter to Theresa Knapp-David ("Knapp-David"), DOCS Director of Classification and Movement, who responded that Plaintiff's transfer to Upstate was due to his "poor disciplinary behavior while at Elmira."  Goord's staff referred Plaintiff's second letter to Edward McSweeney ("McSweeney"), DOCS Assistant Commissioner.  McSweeney responded, indicating that plaintiff should pursue his concerns regarding the disciplinary hearing through the "disciplinary appeal mechanism," and further noting that Plaintiff had not sought review of the dismissal of his grievance by Elmira's Inmate Grievance Program Supervisor.

On December 17, 2004, Plaintiff commenced this action, alleging, that defendants conspired to violate his rights under the First, Eighth, and Fourteenth Amendments. (Docket [#5]).  Regarding the alleged due process violation, Plaintiff contends, for the first time, that during the disciplinary hearing, Thompson turned off the tape recorder and stated that the evidence against Plaintiff was insufficient, but that he was going to find Plaintiff guilty anyway, based upon Plaintiff's poor disciplinary record.

5

Plaintiff also alleges that his sentence of 270 days in SHU constituted cruel and unusual punishment in violation of Eighth Amendment.  Finally, he alleges that the denial of his grievances, as well as his transfer to Upstate, which he contends was retaliatory, violated his First Amendment rights.  Following discovery, Defendants filed the subject summary judgment motion.[2]  In support of the motion, Defendants maintain, *inter alia*, that no constitutional violations occurred.[3]  The Court issued a Motion Scheduling Order, however, Plaintiff filed no opposing papers.  Subsequently the Court issued an Order [#44] indicating that Defendants' motion was deemed submitted and that the Court would issue a written decision.

DISCUSSION

*Summary Judgment Standard*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate

---

[2]Defendants provided the *pro se* Plaintiff with the *Irby* notice required by Local Rule 56.2.

[3]Defendants further contend that , and that Wood, West, Eagen, and Goord were not personally involved, and that Plaintiff failed to exhaust his administrative remedies.

burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).  The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e).  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

7

*42 U.S.C. § 1983*

Pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that the challenged

conduct was attributable at least in part to a person acting under color of state law, and

(2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by

the Constitution or laws of the United States. *Dwares v. City of New York*, 985 F.2d 94,

98 (2d Cir. 1993).  To be liable for money damages under 42 U.S.C. § 1983, a

defendant must have been personally involved in the alleged constitutional deprivation.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  Personal involvement by a

supervisory official may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation through a
> report or appeal, failed to remedy the wrong, (3) the defendant created a
> policy or custom under which unconstitutional practices occurred, or
> allowed the continuance of such a policy or custom, (4) the defendant was
> grossly negligent in supervising subordinates who committed the wrongful
> acts, or (5) the defendant exhibited deliberate indifference to the rights of
> inmates by failing to act on information indicating that unconstitutional acts
> were occurring.

*Id.*(citations omitted).  A plaintiff may not rely upon the doctrine of *respondeat superior*

to establish supervisory liability under 42 U.S.C. § 1983. *Monell v. New York City*

*Department of Social Services*, 436 U.S. 658, 691-95 (1978).

*Procedural Due Process in a Prison Disciplinary Hearing*

The legal standards concerning a Fourteenth Amendment procedural due

process claim arising from a prison disciplinary hearing are clear:

> The Fourteenth Amendment to the Constitution provides that "[n]o State
> shall ... deprive any person of life, liberty, or property, without due process
> of law." U.S. Const. amend. XIV, § 1. Although prison inmates necessarily
> have their liberty severely curtailed while incarcerated, they are

nevertheless entitled to certain procedural protections when disciplinary
actions subject them to further liberty deprivations such as loss of
good-time credit or special confinement that imposes an atypical
hardship.[4]

***

The due process protections afforded a prison inmate do not equate to
the full panoply of rights due to a defendant in a criminal prosecution.
Notably, there is no right to counsel or to confrontation at prison
disciplinary hearings.  Nevertheless, an inmate is entitled to advance
written notice of the charges against him; a hearing affording him a
reasonable opportunity to call witnesses and present documentary
evidence; a fair and impartial hearing officer; and a written statement of
the disposition, including the evidence relied upon and the reasons for the
disciplinary actions taken. . . . [J]udicial review of the written findings
required by due process is limited to determining whether the disposition
is supported by "some evidence."  This standard is extremely tolerant and
is satisfied if there is any evidence in the record that supports the
disciplinary ruling.  Nevertheless . . ."some evidence" standard requires
some "reliable evidence."

*Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citations and internal quotation marks

omitted)

Based upon these applicable principles of law, the Court finds that Defendants

are entitled to summary judgment.  Plaintiff has not produced any evidentiary proof in

admissible form that Wood falsified[5] the misbehavior report, and even if he had, such

evidence would not, by itself, establish a constitutional violation. *Boddie v. Schnieder*,

105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general constitutional right

to be free from being falsely accused in a misbehavior report.").  Plaintiff has also failed

to show that Thompson or Selsky deprived him of procedural due process in connection

with the hearing.  Although Plaintiff now alleges that Thompson made an off-the-record

---

[4]Defendants apparently do not dispute that Plaintiff's sentence, involving SHU confinement and loss
of privileges, satisfies the significant and atypical hardship standard.

[5]In fact, Plaintiff does not allege that the misbehavior report was false, but instead, he contends,
incorrectly, that it was "ambiguous."

9

statement that the evidence was insufficient, such a statement of opinion would not establish a due process violation, since the record indicates that there was sufficient evidence to convict Plaintiff.  Additionally, because Plaintiff never mentioned the alleged statement by Thompson prior to this lawsuit, he failed, in any event, to exhaust that claim.  Plaintiff has similarly failed to show wrongdoing by Graubard, West, or Eagen. In that regard, Plaintiff was not entitled to pursue his due process claims through the inmate grievance process. (DOCS Directive 4040 § III(E) (Indicating that individual dispostions in disciplinary proceedings are "non-grievable issues.").  Nor could Plaintiff have obtained the relief that he was seeking, namely, money damages and release from SHU, through the inmate grievance process.  Goord is also entitled to summary judgment, because he had no personal involvement in any of the alleged violations. Specifically, Plaintiff never wrote to Goord until after he had already completed his disciplinary sentence.  Moreover, Goord never personally viewed the letters.  Plaintiff 's Eighth Amendment claim must also be dismissed, since he has not come forward with any evidence of unconstitutional treatment in SHU.  Finally, to the extent that Plaintiff is alleging that he was transferred to Upstate in retaliation for filing grievances, he has provided no evidence that the transfer was retaliatory, nor is there any indication that Defendants were personally involved in the transfer.

## CONCLUSION

For all of the foregoing reasons, Defendants' application for summary judgment [#32] is granted.  The Court specifically finds, in that regard, that this action is frivolous within the meaning of 28 U.S.C. § 1915(e)(2).  The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good

10

faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:      October 19, 2007
            Rochester, New York

ENTER:


 /s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge